John B. Thomas (Bar No. 269538)
*jthomas@hicks-thomas.com*
Bradley A. Benbrook (Bar No. 177786)
*bbenbrook@hicks-thomas.com*
**HICKS THOMAS LLP**
1301 Dove Street, 5th Floor
Newport Beach, CA 92660
(916) 447-4900

*Attorneys for Prospective*
*Intervenor Plaintiffs*

*(Additional counsel listed on following*
*Page)*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant. | Case No.: 2:26-CV-01946<br><br>**PROSPECTIVE INTERVENOR PLAINTIFFS' NOTICE OF MOTION AND MOTION TO INTERVENE AS PLAINTIFFS**<br><br><br>Hearing Date: May 18, 2026<br>Hearing Time: 10:00 a.m.<br>Court: Judge Christina A. Snyder |

1

Jason B. Torchinsky (*Pro Hac Vice* forthcoming)
*jtorchinsky@holtzmanvogel.com*
**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC**
2300 N. Street NW, Suite 643
Washington, DC 20037
(202) 737-8808

Andrew Gould (*Pro Hac Vice* forthcoming)
*agould@holtzmanvogel.com*
Linley Wilson (*Pro Hac Vice* forthcoming)
*lwilson@holtzmanvogel.com*
Erica Leavitt (*Pro Hac Vice* forthcoming)
*eleavitt@holtzmanvogel.com*
Alexandria Saquella (*Pro Hac Vice* forthcoming)
*asaquella@holtzmanvogel.com*
**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC**
2555 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
(602) 388-1262

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 18, 2026 at 10:00 a.m., or as soon thereafter as this matter may be heard in First Street Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Prospective Intervenor Plaintiffs Kira Stein, Vivien Burt, Nir Hoftman, Ian Holloway, Sarah Blenner, Kamran Shamsa, and Ron Avi Astor ("Intervenor Plaintiffs") will move to intervene in *United States of America v. The Regents of the University of California*, Case No. 26-cv-01946 ("United States Complaint"), pursuant to Federal Rule of Civil Procedure 24 and 42 U.S.C. § 2000e-5(f)(1).

Intervenor Plaintiffs are entitled to intervene pursuant to Fed. R. Civ. P. 24 and 42 U.S.C. § 2000e-5(f)(1). FRCP 24 allows a party, upon timely application, to intervene as a matter of right if given an unconditional right to intervene by a federal statute. Fed. R. Civ. P. 24(a). Here, Intervenor Plaintiffs are aggrieved persons who have been subjected to the same discriminatory conduct alleged by the United States in its Complaint, which involves a Title VII enforcement action, and therefore have the right to intervene pursuant to. 42 U.S.C. § 2000e-5(f)(1) (stating that aggrieved persons have the right to intervene to enforce Title VII). Specifically, pursuant to Rule 24(a), Intervenor Plaintiffs are entitled to intervene as of right because 42 U.S.C. § 2000e-5(f)(1) grants aggrieved employees an unconditional statutory right to intervene, and their motion has been timely filed. Fed. R. Civ. P. 24(a). Alternatively, permissive intervention is also warranted, as undue delay or prejudice to the parties would not result from intervention. Fed. R. Civ. P. 24(b).

Intervenor Plaintiffs' Motion to Intervene as Plaintiffs is based on this Notice of Motion, and Motion, including a Memorandum of Points and Authorities, the exhibits attached thereto, and the declaration of Andrew W. Gould, and the proposed Complaint in intervention (attached as Exhibit 1).

3

Respectfully submitted this 14th day of April 2026.

By: _/s/ John B. Thomas_

John B. Thomas (Bar No. 269538)
Bradley A. Benbrook (Bar No. 177786)
**HICKS THOMAS LLP**
1301 Dove Street, 5th Floor
Newport Beach, CA 92660

Jason B. Torchinsky*
**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC**
2300 N. Street NW, Suite 643
Washington, DC 20037

Andrew W. Gould*
Linley Wilson*
Erica Leavitt*
Alexandria Saquella*
**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC**
2555 East Camelback Road
Suite 700
Phoenix, Arizona 85016

*Attorneys for Prospective Intervenor Plaintiffs*

*\*Pro Hac Vice Forthcoming*

4

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ ii

I.   INTRODUCTION ................................................................................5

II.  STATEMENT OF FACTS .....................................................................6

   A. The United States' Complaint ......................................................6

   B. Intervenor Plaintiffs Are Aggrieved Persons .................................7

   C. Intervenor Plaintiffs Have Exhausted Their Administrative Remedies .....10

III. ARGUMENT ....................................................................................11

   A. Intervenor Plaintiffs Are Entitled to Intervene as a Matter of Right
      Under Federal Statute .............................................................11

   B. Alternatively, Intervenor Plaintiffs Have a Right to Intervene Because of
      an Impaired Interest ...............................................................14

      i.  Sufficient Interest ...........................................................14

      ii. Impaired Interest ............................................................15

      iii. Adequate Representation....................................................16

   C. Permissive Intervention by Intervenor Plaintiffs Is Also Warranted .........18

IV.  CONCLUSION .................................................................................20

CERTIFICATE OF SERVICE .........................................................................22

# TABLE OF AUTHORITIES

**CASES**

*Andrade v. Arby's Rest. Grp., Inc.*,
  225 F. Supp. 3d 1115 (2016) ...............................................................................17

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) .............................................................................16

*Berger v. North Carolina State Conf. of the NAACP*,
  597 U.S. 179 (2022)..............................................................................................16

*Bridgeport Guardians, Inc. v. Delmonte*,
  602 F.3d 469 (2nd Cir. 2010) ..............................................................................15

*City of Emeryville v. Robinson*,
  621 F.3d 1251 (9th Cir. 2010) .............................................................................15

*Data Processing Service v. Camp*,
  397 U.S. 150 (1970) .............................................................................................12

*Day v. Apoliona*,
  505 F.3d 963 (9th Cir. 2007) ...............................................................................13

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998)..........................................................14, 15, 18, 19

*E.E.O.C. v. Giumarra Vineyards Corp.*,
  No. 1:09-CV-02255-OWW, 2010 WL 3220387 (E.D. Cal. 2010).................. 11, 12

*E.E.O.C. v. University of Phoenix, Inc.*,
  No. 06-2303-PHX-MHM, 2008 WL 1971396 (D. Ariz. 2008) ...........................12

*EEOC v. GMRI, Inc.*,
  221 F.R.D. 562 (D. Kan. 2004) ...........................................................................12

*EEOC v. JCFB, Inc.*,
  No. 19-CV-00552-LHK, 2019 WL 2525203 (N.D. Cal. June 19, 2019)..............13

*Flynt v. Lombardi*,
  782 F3d 963 (8th Cir. 2015) ................................................................................18

*Foust v. Transamerica Corp.*,
  391 F. Supp. 312 (N.D. Cal. 1975)......................................................................12

ii

*Fritsch v. City of Chula Vista*,
  196 F.R.D. 562 (S.D. Cal. 1999) ...................................................................................18

*General Telephone Co. v. EEOC*,
  446 U.S. 318 (1979) ......................................................................................................11

*Greene v. United States*,
  996 F.2d 973, 975 (9th Cir. 1993) ...........................................................................14, 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liability Litig.*,
  894 F.3d 1030 (9th Cir. 2018) .......................................................................................11

*Kelley v. Fundomate, Inc.*,
  773 F. Supp. 3d 899 (2025) ............................................................................................17

*Kohler v. Inter-Tel Techs.*,
  244 F.3d 1167 (9th Cir. 2001) .......................................................................................18

*Kozak v. Well,*
  278 F.2d 102 (8th Cir. 1960) .........................................................................................13

*Southwest Ctr. for Biological Diversity v. Berg,*
  268 F.3d 810 (9th Cir. 2001) .........................................................................................14

*Tech. Training Assocs. v. Buccaneers Ltd. P'ship*,
  874 F.3d 692 (11th Cir. 2017) .......................................................................................17

*Texas v. U.S.,*
  805 F3d 653 (5th Cir. 2015) .....................................................................................14, 15

*Trbovich v. United Mine Workers*,
  404 U.S. 528 (1972).......................................................................................................16

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) .........................................................................................13

*U.S. v City of Los Angeles, Cal.*,
  288 F3d 391, 401 (9th Cir. 2002) ..................................................................................15

*United States v. Oregon*,
  745 F.2d 550 (9th Cir. 1984) .........................................................................................13

**STATUTES**

42 U.S.C. § 2000e et seq............................................................3, 6, 10, 11, 18

Cal. Gov't Code § 12940 et seq...........................................................5, 15

Fed. R. Civ. P. 24..............................................11, 14, 15, 16, 18, 19, 20

## I.    INTRODUCTION

Prospective Intervenor Plaintiffs, Dr. Kira Stein, Dr. Vivien Burt, Dr. Nir Hoftman, Dr. Ian Holloway, Director Sarah Blenner, Dr. Kamran Shamsa, and Dr. Ron Avi Astor (collectively, "Intervenor Plaintiffs") respectfully move for leave to intervene as plaintiffs in this lawsuit brought by Plaintiff United States against the Regents of the University of California, Los Angeles ("UCLA" or "Defendant").

In its Complaint, the United States alleges that UCLA is engaged in a pattern or practice of discrimination against Jewish and Israeli employees by failing to prevent and correct antisemitic workplace discrimination since October 2023. Specifically, the United States alleges that UCLA subjected Drs. Holloway and Shamsa to a hostile work environment because of their race, religion, and national origin in violation of Title VII, and retaliated against both professors because they filed EEOC charges. Further, the United States alleges that UCLA subjected other unnamed, aggrieved Jewish and Israeli employees of UCLA to a hostile work environment because of their race, religion, and national origin in violation of Title VII.

Apart from Drs. Holloway and Shamsa, who are named as representative parties in the United States' Complaint, the remaining Intervenor Plaintiffs are among the "unnamed" aggrieved Jewish and Israeli employees also referenced in the United States' Complaint. Specifically, Dr. Stein, Dr. Burt, Dr. Hoftman, Dr. Astor, and Director Blenner are similarly aggrieved persons who, like Drs. Holloway and Shamsa, have suffered the same pattern and practice of antisemitic discrimination and hostile work environment conditions at UCLA.

All Intervenor Plaintiffs have properly exhausted their administrative remedies (*see*, *infra* Section II (C)), and seek to timely intervene in this case to assert their individual claims under Title VII and state law claims under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12940, et seq.

Pursuant to Local Rule 7-3, counsel for Intervenor Plaintiffs conferred with the parties at least seven days before filing this motion. The United States does not oppose this motion, and the University of California indicated it could not take a position on the motion at the time of the meet and confer.

## II.    STATEMENT OF FACTS

### A.    The United States' Complaint

On February 24, 2026, the United States filed this action pursuant to Sections 707 and 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., against the University of California and its Board of Regents to redress violations of Title VII at UCLA based on race, religion, and national origin discrimination.

The facts and allegations underlying Intervenor Plaintiffs' Complaint, as well as their causes of action, are the essentially same as those in the United States' Complaint. Specifically, the United States' Complaint alleges that since October 2023, following Hamas' terrorist attacks on Israel, Jewish and Israeli employees at UCLA have been subjected to rampant antisemitic conduct that has created a hostile work environment for them. The Complaint further alleges that UCLA has engaged in a pattern or practice of discrimination by failing to prevent and correct this antisemitic workplace discrimination.

The United States' Complaint alleges several Title VII claims against UCLA. Count One alleges, without naming any individual employees, that UCLA is engaged in a pattern or practice of discrimination against Jewish and Israeli employees by failing to prevent and correct antisemitic workplace discrimination since October 2023. Similarly, Count Six alleges, "on behalf of other aggrieved parties," that UCLA discriminated against other, unnamed aggrieved Jewish and Israeli UCLA employees by subjecting them to a hostile work environment based on their race, religion, and national origin.

6

Counts II through V address the named representative aggrieved parties—Drs. Holloway and Shamsa. Counts II and IV allege that both professors were subjected to a hostile work environment in violation of Title VII. Specifically, both professors were subjected to antisemitic harassment because of their religion and perceived national origin, including threats, defamatory statements, negative job consequences, humiliating differential treatment, and a disruption to their academic work on campus in violation of Title VII. Next, Count III alleges that UCLA retaliated against Dr. Holloway by unnecessarily informing all faculty in his department that he filed an EEOC charge, and Count V alleges that UCLA retaliated against Dr. Shamsa when it denied him promotional opportunities after he filed an EEOC charge.

### B.   Intervenor Plaintiffs Are Aggrieved Persons

Each Intervenor Plaintiff is a Jewish faculty member or employee at UCLA who has been subjected to the same discriminatory conduct alleged by the United States in its Complaint:

**Dr. Kira Stein** is a volunteer clinical faculty member at UCLA's David Geffen School of Medicine who founded the Jewish Faculty Resilience Group. Dr. Stein reported the "Depathologizing Resistance" lecture to UCLA administrators before and after it occurred, warning that its content was antisemitic. Dr. Stein was subsequently suspended from teaching after being falsely accused of "doxxing" residents for recording the lecture. Despite the lecture being acknowledged as antisemitic by department leadership, Dr. Stein remains suspended while those who delivered the antisemitic content faced no discipline. On June 25, 2025, the EEOC found reasonable cause to believe UCLA subjected Dr. Stein to an unlawful hostile work environment and different terms and conditions of employment based on her Jewish identity. Intervenor Plaintiff Dr. Stein incorporates by reference Exhibit 1, ¶¶ 202-265.

**Dr. Vivien Burt** is a professor emeritus at UCLA's David Geffen School of Medicine and founder of The Women's Life Center. Dr. Burt was subjected to a professional boycott by medical residents who refused to receive instruction from her because she is a "Zionist." She was denied entry to the UCLA Encampment because she is Jewish. Her professional responsibilities were reduced, she was subjected to monitoring requirements, and she was no longer permitted to have unsupervised communication with residents.  In light of UCLA's failure to address the antisemitism directed at her, Dr. Burt was constructively discharged and took a leave of absence in June 2024.  On May 23, 2025, the EEOC found reasonable cause to believe UCLA subjected Dr. Burt to an unlawful hostile work environment based on her Jewish identity. Intervenor Plaintiff Dr. Burt incorporates by reference Exhibit 1, ¶¶ 266-312.

**Dr. Nir Hoftman** is a clinical professor at UCLA's David Geffen School of Medicine who has witnessed and experienced numerous instances of antisemitism, including being physically assaulted at the Encampment. When he reported antisemitic conduct, he was accused by UCLA leadership of being the reason why prospective Jewish medical students were having less interest in attending the medical school. On May 23, 2025, the EEOC found reasonable cause to believe UCLA subjected Dr. Hoftman to an unlawful hostile work environment based on his Jewish identity. Intervenor Plaintiff Dr. Hoftman incorporates by reference Exhibit 1, ¶¶ 313-362.

**Dr. Kamran Shamsa**, a representative party already named in the United States' Complaint, is associate clinical professor within the Medical Department, Cardiology Division at UCLA. Professor Shamsa experienced antisemitism when he was physically assaulted near the Spring 2024 UCLA encampment while nearby UCLA security guards failed to intervene. Later he was pushed again by a guard despite showing his faculty badge. Subsequently, Professor Shamsa experienced retaliation by UCLA when he was denied a promotion for a leadership role he had

already been performing; effectively, leaving him the only doctor without a director-level position and paid significantly less than his peers. On May 23, 2025, the EEOC found reasonable cause to believe UCLA subjected Professor Shamsa to an unlawful hostile work environment, denial of promotion, and different terms and conditions of employment based on his Jewish identity, as well as retaliation for complaining of discrimination. Intervenor Plaintiff Dr. Shamsa incorporates by reference Exhibit 1, ¶¶ 363-397.

**Dr. Ian Holloway**, a representative party already named in the United States' Complaint, is a tenured professor formerly at UCLA's Luskin School of Public Affairs who later transferred to the School of Nursing. After signing the "UCLA Faculty Against Terror" letter, Dr. Holloway was targeted with harassing messages on his classroom chalkboard and received negative course evaluations specific to Israel despite his classes not involving any discussion of Israel. He was told by a colleague that as a "white-privileged male" he did not have a right to complain about antisemitism. The hostile environment and retaliation forced Dr. Holloway to transfer departments, resulting in pay cuts, loss of research funding, and ultimately medical leave. On May 23, 2025, the EEOC found reasonable cause to believe UCLA subjected Dr. Holloway to an unlawful hostile work environment and retaliation based on his Jewish identity. Intervenor Plaintiff Dr. Holloway incorporates by reference Exhibit 1, ¶¶ 398-448.

**Director Sarah Blenner** is the Director of Field Studies and Applied Professional Training in the Department of Community Health Sciences. Director Blenner was denied a position for which she was recruited shortly after October 7, 2023, despite being more qualified than the candidate who received it. After traveling to Israel with UCLA approval, she was required by her Department Chair to send a letter to students assuring them she would not discriminate against them. She was subjected to progressive discipline and pervasive micromanagement, including having her teaching responsibilities reduced and being denied a

promotion. On May 23, 2025, the EEOC found reasonable cause to believe UCLA subjected Director Blenner to an unlawful hostile work environment based on her Jewish identity. Intervenor Plaintiff Director Blenner incorporates by reference Exhibit 1, ¶¶ 449-520.

**Dr. Ron Avi Astor** is a tenured professor at the Luskin School of Public Affairs. After signing the "UCLA Faculty Against Terror" letter, Dr. Astor was subjected to classroom vandalism, defamatory accusations of supporting genocide, student boycotts of his events, and a course cancellation. His research activities have been directly impacted: protesters disrupted his research presentation while UCLA failed to enforce its policies. UCLA denied a donor's request that monies be used for Dr. Astor's proposed Jewish-related research and instead redirected the funds to other projects. On May 23, 2025, EEOC found reasonable cause to believe UCLA subjected Dr. Astor to an unlawful hostile work environment and retaliation based on his Jewish identity. Intervenor Plaintiff Dr. Astor incorporates by reference Exhibit 1, ¶¶ 521-584.

### C. Intervenor Plaintiffs Have Exhausted Their Administrative Remedies

Intervenor Plaintiffs timely filed charges of discrimination with the Equal Employment Opportunity Commission. *See* Exhibits A-G (attached to Exhibit 1). The EEOC made reasonable cause determinations in their favor, and thereafter completed conciliation as required by 42 U.S.C. § 2000e-5(b). *See id.*

On March 11, 2026, Intervenor Plaintiffs Dr. Stein, Dr. Burt, Dr. Hoftman, Dr. Astor, and Director Blenner were issued right-to-sue letters pursuant to 42 U.S.C. § 2000e-5(f)(1), giving them 90 days from that date to file suit. *See* Exhibits 2-6. Additionally, because Dr. Holloway and Dr. Shamsa were named plaintiffs in the United States' Complaint, right-to-sue letters were not required as to them. *See* 42 U.S.C. § 2000e-5(f)(1) (right-to-sue letters are unnecessary when the Attorney

General has filed a civil action against a governmental entity on behalf of an aggrieved person).[1]

## III.   ARGUMENT

Parties may intervene in a lawsuit as a matter of right or with the permission of the Court under Rule 24 of the Federal Rules of Civil Procedure. "Rule 24(a) is construed broadly, in favor of the applicants for intervention." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liability Litig.*, 894 F.3d 1030, 1037 (9th Cir. 2018).

### A.   Intervenor Plaintiffs Are Entitled to Intervene as a Matter of Right Under Federal Statute

Rule 24(a) of the Federal Rules of Civil Procedure permits intervention as of right "on a timely motion," and when the intervenor "is given an unconditional right to intervene by a federal statute...." Fed. R. Civ. P. 24(a)(1). Here, Title VII expressly provides aggrieved employees the right to intervene in civil actions brought by the EEOC or the United States. 42 U.S.C. § 2000e-5(f)(1) ("[T]he person or persons aggrieved shall have the right to intervene in a civil action brought by the [EEOC]...").The United States Supreme Court has made clear that aggrieved individuals have the statutory right to intervene in cases in which the EEOC or the United States has filed a Complaint against the individuals' employer for violations of Title VII. *General Telephone Co. v. EEOC*, 446 U.S. 318, 326 (1979); *see also E.E.O.C. v. Giumarra Vineyards Corp.*, No. 1:09-CV-02255-OWW, 2010 WL

---

[1] The 90-day deadline to bring an action under 42 U.S.C. § 2000e-5(f)(1) falls on June 9, 2026. Intervenor Plaintiffs' timely filing of this Motion to Intervene, accompanied by their proposed Complaint (Exhibit 1), satisfies this 90-day statutory requirement to commence an action. *See Jack v. Travelers Ins. Co.*, 22 F.R.D. 318, 320 (E.D. Mich. 1958), *aff'd*, 277 F.2d 736 (6th Cir. 1960); *see also Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1172-74 (9th Cir. 1986) (holding the 90-day deadline is not a jurisdictional prerequisite, but rather subject to equitable tolling). Intervenor Plaintiffs preserve their right to file a separate action before the expiration of the 90-day deadline, if necessary, to protect their statutory rights.

3220387, at *6 (E.D. Cal. 2010) (stating that aggrieved persons have an "unconditional right to intervene" in a Title VII enforcement action); *E.E.O.C. v. University of Phoenix, Inc.*, No.06-2303-PHX-MHM, 2008 WL 1971396 at *3 (D. Ariz. 2008) (same).

To have standing as an aggrieved person an intervenor must show an injury and the "interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute." *Foust v. Transamerica Corp.,* 391 F. Supp. 312, 314 (N.D. Cal. 1975), *citing Data Processing Service v. Camp*, 397 U.S. 150, 152-53 (1970). Thus, for the purpose of intervention under Title VII, an "aggrieved person" is one who has either filed a charge with the EEOC, or who alleges claims nearly identical to those of a party who has filed an EEOC charge. *See EEOC v. GMRI, Inc.*, 221 F.R.D. 562, 563 n.4 (D. Kan. 2004).

Here, all Intervenor Plaintiffs are aggrieved parties who have filed charges of discrimination with the EEOC and, with the exception of Drs. Holloway and Shamsa, have received right-to-sue letters. *See supra* Section II, C. Further, Drs. Holloway and Shamsa are already specifically named as representative aggrieved parties in the United States' Complaint. *See United States Complaint*, Counts II-V. Additionally, the remaining Intervenor Plaintiffs, Drs. Astor, Stein, Burt, Hoftman, and Director Blenner, allege claims that are identical or nearly identical to those in the United States' Complaint. Indeed, in their proposed Complaint (Exhibit 1, attached), Intervenor Plaintiffs allege the same general facts as alleged in the government's Complaint — many of the facts are nearly identical — concerning the discrimination and hostile work environment they have experienced at UCLA based on their Jewish religion, Israeli national origin, and/or race, and either a lack of response on behalf of UCLA or retaliation for complaining of discrimination to the EEOC. *See United States Complaint*, Counts I & VI.

Thus, under Rule 24, because Intervenor Plaintiffs have a statutory right to intervene, they must be permitted to intervene so long as their application is timely.

12

To determine whether a motion to intervene is timely, courts consider: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *Unites States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). Courts are generally more lenient in considering these factors when intervention is sought as a matter of right. *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). "Mere lapse of time alone is not determinative." *Id.*

Intervenor Plaintiffs' motion is timely. This litigation is in its earliest stages. The United States filed its Complaint on February 24, 2026. Intervenor Plaintiffs are seeking to intervene only 49 days after the filing of the United States' Complaint. No answer has been filed, no discovery has been propounded, no scheduling order has been entered, and no trial date has been set. A motion to intervene is timely when filed at such early stages. *See EEOC v. JCFB, Inc.*, No. 19-CV-00552-LHK, 2019 WL 2525203, at *21 (N.D. Cal. June 19, 2019) (finding intervention timely when filed approximately three months after the filing of complaint).

Further, there is no indication that any party would be prejudiced by granting intervention. The court has not issued any substantive ruling. "When an application for leave to intervene is filed, as is the case here, before the existing parties have even joined the issues, the application is almost uniformly deemed timely." *Kozak v. Well*, 278 F.2d 102, 109 (8th Cir. 1960); *see also Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (holding that intervention would not cause delay by adding new issues but would simply ensure that an existing issue is not shielded from review due to the parties' posture). Because no discovery has been taken and both the discovery cut-off and trial dates are still to be set, none of the existing parties will be prejudiced by the Intervenor Plaintiffs' entry into the litigation at this time.

Moreover, Intervenor Plaintiffs have been diligent, and have not delayed filing this motion. Intervenor Plaintiffs filed this motion promptly upon learning of

13

the United States' enforcement action and after receiving right-to-sue letters from the EEOC. *See supra* Section II(C).

### B. <u>Alternatively, Intervenor Plaintiffs Have a Right to Intervene Because of an Impaired Interest</u>

Rule 24(a)(2) also permits intervention when a party shows an "impaired interest." The Ninth Circuit applies a four-part test in evaluating "interest-impairment" intervention as a matter of right, requiring that an applicant demonstrate: (1) the application for intervention is timely; (2) the applicant possesses a "significantly protectable" interest in the subject matter of the action; (3) without intervention the action may impair or impede the applicant's ability to protect that interest; and (4) the interest is inadequately represented by the existing parties. *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). In determining whether interest-impairment intervention is appropriate, the Ninth Circuit is guided primarily by practical and equitable considerations and generally interprets the requirements broadly in favor of intervention. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

#### i.    *Sufficient Interest*

Here, as noted above, *see supra*, Section III(A), Intervenor Plaintiffs' motion is timely; therefore, the next requirement under Rule 24(a)(2) is whether the intervening party has a sufficient interest in the subject matter of the pending case. Fed. R. Civ. P. 24(a)(2). "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established." *Greene v. United States*, 996 F.2d 973, 975 (9th Cir. 1993); *see also Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 772 (6th Cir. 2022).

A party's interest in addressing the unlawful employment practices of an employer or a likelihood of being legally bound by the judgment in the pending case, are cognizable interests for purposes of Rule 24(a)(2). *See Texas v. U.S.,* 805

F.3d 653, 658 (5th Cir. 2015); *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010); *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 474 (2nd Cir. 2010). Specific to the Ninth Circuit, an interest in the matter must be one that is "significantly protectable" in the subject matter of the action. *Donnelly*, 159 F.3d at 409. A prospective intervenor "has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Id.*

Here, Intervenor Plaintiffs assert hostile work environment, discrimination and retaliation claims that are covered by Title VII. These claims are directly related, if not nearly identical to the United States' claims in its Complaint. As a result, adjudication of the United States' Complaint, given the common questions of law and fact with Intervenor Plaintiffs' proposed complaint, would directly affect the Intervenor Plaintiffs' claims, and create a likelihood that Intervenor Plaintiffs would be legally bound by the Court's judgment in this case. This, of course, would occur without Intervenor Plaintiffs having an opportunity to present their own claims and requested remedies, such as their state law claims under FEHA, Cal. Gov. Code §§ 12940 *et seq.*, which are not alleged in the United States' Complaint. Additionally, Intervenor Plaintiffs also hold a protectable interest in the outcome of this case related to UCLA's future employment practices—particularly as it relates to antisemitism and discrimination against Jewish and Israeli employees.

### ii. Impairment of Interest

The next factor under Rule 24(a)(2) is impairment of interest. As to this factor, Intervenor Plaintiffs need only show that impairment of a substantial legal interest is possible if intervention is denied, such as potential claim preclusion and issue preclusion affecting their case. *U.S. v City of Los Angeles*, *Cal.*, 288 F3d 391, 401 (9th Cir. 2002) (potential impairment is sufficient). And as noted in Rule 24(a)(2), a *practical* consequence of litigation may also cause sufficient risk of impairment to the parties seeking to intervene. *See* Fed. R. Civ. P. 24(a)(2) (the

interest "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest").

Based on the common questions of law and fact between Intervenor Plaintiffs and the United States' Complaint, the potential for impairment is clear. It is highly likely that Intervenor Plaintiffs will, in any parallel or subsequent proceeding, be bound to this Court's rulings and final judgment—all without being provided an opportunity to present their claims and evidence in this case. Moreover, allowing Intervenor Plaintiffs to intervene in this case serves both efficiency and access to the courts; by permitting parties with a practical interest in the outcome to intervene, courts often prevent or simplify future litigation involving related issues. *See Greene*, 996 F.2d at 975.

### iii. Adequate Representation

The last factor is whether there is adequate representation by the existing parties. Fed. R. Civ. P. 24(a)(2). An intervenor need only demonstrate that representation of their interests "may be" inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). In conducting this analysis, the court is required to compare the Intervenor Plaintiffs' interests with the interests of the existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) ("The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties."). Critically, where the intervenors' interests are similar to, but not identical with, the existing party, a presumption of adequate representation is typically improper. *See Berger v. North Carolina State Conf. of the NAACP*, 597 U.S. 179, 195 (2022) (citing *Trbovich*, 404 U.S. at 538).

Here, because the United States may not adequately represent the interests of Intervenor Plaintiffs, no presumption of adequate representation should apply. While the Intervenor Plaintiffs and the United States share a common interest in remedying antisemitic discrimination at UCLA, their interests may diverge in

16

critical respects. The United States' lawsuit seeks to vindicate the rights of the broader class of Jewish and Israeli faculty at the University. In contrast, each of the Intervenor Plaintiffs have suffered distinct, individualized harms arising from their unique circumstances, professional positions, and personal experiences with discrimination. These particularized injuries—which include specific incidents of harassment, hostile work environment conditions, and retaliatory conduct directed at each individual—may not be adequately addressed by the United States.

Inadequate representation may also be shown when an existing party has a greater incentive to compromise or settle a claim than the proposed intervenor. *Tech. Training Assocs. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017). And here, because the United States represents a broader class of interests than Intervenor Plaintiffs—all Jewish and Israeli faculty at UCLA—it must necessarily pursue remedies designed to benefit the broadest possible class. The United States acts not as a private advocate but as a representative of the United States and the class of aggrieved persons at UCLA; as a result, its litigation strategy and settlement posture must account for the broader public interest, and prioritize the interests of that class over the remedies that may focus primarily on the individualized claims and interests of Intervenor Plaintiffs.

Additionally, Intervenor Plaintiffs' claims under California state law may provide defenses, and permit remedies and damages that are not available under the United States' Complaint, which has only alleged Title VII claims. For example, there is no cap on compensatory damages under FEHA, unlike under Title VII. Compensatory damages for emotional distress under FEHA are not subject to a fixed or absolute standard, and juries are afforded broad discretion to determine the appropriate amount based on the evidence presented. *See Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1141 (2016); *Kelley v. Fundomate, Inc.*, 773 F. Supp. 3d 899, 930 (2025). The employee may also seek to recover non-economic damages to compensate her for any emotional distress, mental anguish, pain,

17

suffering, or harm to her reputation that was caused by the employer's misconduct. *Fritsch v. City of Chula Vista*, 196 F.R.D. 562, 568 (S.D. Cal. 1999).

### C.   Permissive Intervention By Intervenor Plaintiffs Is Also Warranted

Alternatively, if the court does not find statutory intervention as of right for some or all of the Intervenor Plaintiffs, the court should allow permissive intervention under Rule 24(b). A court may grant permissive intervention when a timely motion shows that intervention is either 1) conditionally authorized by statute or 2) the intervening party has a) an independent ground for jurisdiction, b) a timely motion, c) and a common question of law or fact.  Fed. R. Civ. P. 24(b); *see also Donnelly,* 159 F.3d at 412; *Flynt v. Lombardi*, 782 F3d 963, 966 (8th Cir. 2015).

Here, because federal statute provides aggrieved employees an unconditional statutory right to intervene (42 U.S.C. § 2000e-5(f)(1)), this Court need not analyze whether permissive intervention is conditionally authorized by statute. Additionally, as discussed above, *see supra*, Section III(A), Intervenor Plaintiffs' motion is timely. Thus, the relevant inquiry for permissive intervention is whether the Intervenor Plaintiffs satisfy Rule 24(b)'s remaining two requirements—an independent ground for jurisdiction and common questions of law or fact.

Intervenor Plaintiffs clearly have an independent basis for subject-matter jurisdiction because their claims involve a Federal question. Specifically, the claims raised in Intervenor Plaintiffs' proposed complaint include Title VII claims which are federal causes of action. Additionally, their state claims are directly related and virtually mirror the federal claims and are therefore part of the same "case or controversy" as the federal law claims. It follows, therefore, that this Court has subject matter jurisdiction over the state claims under its supplemental jurisdiction. *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1170 (9th Cir. 2001) (holding

18

supplemental jurisdiction proper where federal and FEHA claims arose from the same nucleus of operative facts).

Finally, Intervenor Plaintiffs' proposed complaint shares common question of law and fact with the United States' Complaint in the pending litigation. Fed. R. Civ. P. 24(b); *See Donnelly,* 159 F.3d at 412. Both actions arise from an alleged pattern of antisemitic harassment and discrimination at UCLA following October 7, 2023, and both allege violations of Title VII premised on hostile work environment, disparate treatment, and retaliation against Jewish and Israeli employees. The factual questions are materially identical: whether UCLA failed to prevent and correct pervasive antisemitic conduct, whether Jewish employees were subjected to harassment based on their race, religion, and national origin, whether UCLA maintained inadequate complaint procedures, and whether the university retaliated against employees who complained. The United States specifically alleges that UCLA's standard procedure was to prematurely close antisemitism complaints without adequate investigation, and the proposed intervenors' complaint details precisely how each plaintiff experienced this same treatment. Moreover, proposed intervenors Drs. Holloway and Shamsa are named charging parties in the United States' Complaint, creating direct factual overlap. The evidentiary record will also necessarily include the same documents—UCLA's Anti-Discrimination Policy, EEOC Letters of Determination, the Antisemitism Task Force Report, and complaint records—demonstrating that resolution of the Intervenor Plaintiffs' claims is inherently intertwined with resolution of the United States' claims.

The legal questions are equally parallel. Both complaints require the Court to determine whether UCLA created an unlawful hostile work environment under Title VII by tolerating antisemitic harassment sufficiently severe or pervasive to alter the conditions of employment, and whether UCLA had actual or constructive knowledge of the harassment yet failed to take prompt and effective remedial action. Both also allege retaliation under Title VII against employees who engaged

19

in protected activity, requiring application of the same legal framework. Because both the facts and legal theories are shared, permitting intervention will promote judicial economy and avoid inconsistent judgments. The Intervenor Plaintiffs' claims arise from common, if not the same, questions of fact and law as the United States' Complaint, satisfying the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b).

Finally, in considering whether to grant permissive intervention, this Court must examine whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b)(3). As already discussed above, Intervenor Plaintiffs' Complaint is based on common facts and legal claims as the United States' Complaint. Additionally, intervention at this time would not unduly delay or prejudice UCLA because it already has notice of Intervenor Plaintiffs' claims. Specifically, UCLA has been aware of Intervenor Plaintiffs' complaints of discrimination and hostile work environment through their internal complaints, and charges filed with the EEOC.

## CONCLUSION

Intervenor Plaintiffs, as aggrieved individuals, are entitled to intervene in this Title VII enforcement action under Fed. R. Civ. P. 24(a) as of right and, alternatively, under Fed. R. Civ. P. 24(b) though permissive intervention. Thus, for all the reasons set forth above, Intervenor Plaintiffs respectfully request that their motion to intervene as plaintiffs in the instant action be granted. In accordance with Rule 24(c), a pleading setting forth the claims for which intervention is sought— the proposed Complaint—accompanies this motion.

Respectfully submitted this 14th day of April 2026.

By: _/s/ John B. Thomas_
    John B. Thomas (Bar No. 269538)
    Bradley A. Benbrook (Bar No. 177786)
    **HICKS THOMAS LLP**
    1301 Dove Street, 5th Floor
    Newport Beach, CA 92660

Jason B. Torchinsky*
**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC**
2300 N. Street NW, Suite 643
Washington, DC 20037

Andrew W. Gould*
Linley Wilson*
Erica Leavitt*
Alexandria Saquella*
**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC**
2555 East Camelback Road
Suite 700
Phoenix, Arizona 85016

*Attorneys for Prospective Intervenor Plaintiffs*

*\*Pro Hac Vice Forthcoming*

21

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for proposed intervenor plaintiffs, certifies on this 14th day of April 2026, that this brief contains 4,999 words, which complies with the word limit of L.R. 11-6.1.

*/s/ John B. Thomas*
John B. Thomas
*Attorney for Prospective Intervenor Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April 2026, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing, which will send notice of such filing to all registered CM/ECF users.

*/s/ John B. Thomas*
John B. Thomas
*Attorney for Prospective Intervenor Plaintiffs*